```
                                                                    1

 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    BRENDA L. PATTON ISMAIL,        )  Docket No. 15 C 399
                                      )
 4               Plaintiff,           )  Chicago, Illinois
                                      )  September 15, 2016
 5          v.                        )  9:13 a.m.
                                      )
 6    TRITON COLLEGE,                 )
                                      )
 7               Defendant.           )

 8
              TRANSCRIPT OF PROCEEDINGS - Motion Hearing
 9              BEFORE THE HONORABLE THOMAS M. DURKIN

10
      APPEARANCES:
11

12    For the Plaintiff:    GOLDMAN & EHRLICH by
                            MR. JONATHAN C. GOLDMAN
13                          20 S. Clark Street
                            Suite 500
14                          Chicago, IL 60603

15
      For the Defendant:    KUSPER & RAUCCI CHTD. by
16                          MR. DANIEL E. CANNON
                            30 N. LaSalle Street
17                          Suite 3400
                            Chicago, IL 60602
18

19    Also Present:         MS. BRENDA L. PATTON ISMAIL (as noted)

20
      Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
21                          Official Court Reporter
                            219 S. Dearborn Street, Room 1432
22                          Chicago, IL 60604
                            312.435.6053
23                          laura_renke@ilnd.uscourts.gov

24

25
```

1     (In open court.)

2     THE CLERK: Okay. 15 C 399, Patton Ismail v. Triton
3 College.

4     THE COURT: Good morning.

5     MR. GOLDMAN: Good morning, your Honor. Jonathan
6 Goldman, Arthur Ehrlich's partner, on behalf of the plaintiff.

7     MR. CANNON: Dan Cannon for the defendant, your Honor.

8     THE COURT: All right. And were you aware,
9 Mr. Goldman, or was Mr. Ehrlich aware that Ms. Ismael
10 apparently filed a new complaint with the Illinois Human Rights
11 Commission?

12     MR. GOLDMAN: No, we were not. We became aware when
13 Mr. Cannon let Mr. Ehrlich know.

14     And since then, Ms. Patton Ismail has dismissed it.
15 She's on her way here today, but she's stuck in traffic. So
16 but she is here -- you know, she's on her way to kind of
17 explain what happened.

18     THE COURT: I'd like an explanation --

19     MR. GOLDMAN: Okay.

20     THE COURT: -- because right now --

21     MR. GOLDMAN: From what I understand --

22     THE COURT: Yeah, go ahead.

23     MR. GOLDMAN: -- she went to the Department of Human
24 Rights to -- you know, she was upset that she was required to
25 resign as part of the settlement. She went to the Department

1  of Human Rights to let them know that they should warn people
2  that there may be a settlement where -- and they encouraged her
3  to file a complaint.  And as soon as we found out, we let her
4  know it was in violation.  And she has dismissed it.
5          THE COURT:  All right.  I don't blame you.  But I --
6  there's a request by defense for fees relating to the bringing
7  of this motion.
8          MR. GOLDMAN:  Well, and --
9          THE COURT:  We shouldn't be here --
10         MR. GOLDMAN:  I agree we shouldn't be here.
11         And we were informed on Friday the 9th.  Mr. Ehrlich
12  responded that he's going to look into it.  And the motion was
13  filed on the 12th without us even having another opportunity to
14  discuss with them.
15         She made the request on the 12th for the documents or
16  whatever.  And it has since been dismissed.  So I -- well --
17         MR. CANNON:  Just not to bicker the point, but nothing
18  has been dismissed at the IDHR.  Their procedure is that they
19  have a form you're required to file called a Notice of
20  Withdrawal.  What happens to that form, there's no motion
21  practice.  There's no one to issue an order based on your --
22  the form you filed.  Where that form is if Ms. Ismail mailed it
23  in, I don't know.
24         There's been no order dismissing the case at the
25  Department of Human Rights or the EEOC where it was

1 | simultaneously filed.
2 | THE COURT: All right. Well, we need her in here.
3 | Can you both stay till when she arrives?
4 | MR. GOLDMAN: Yes. And I'll remind her that we're
5 | going to wait for her to appear.
6 | THE COURT: Please do, because there's a serious
7 | motion to -- for me to impose costs against her personally for
8 | what is -- for what's happened.
9 | MR. GOLDMAN: Yes, I understand.
10 | THE COURT: Put it that way. Okay.
11 | MR. GOLDMAN: I do have a file-stamped copy -- or a
12 | received-stamped copy of the withdrawal request.
13 | THE COURT: Well, show it to counsel and --
14 | MR. GOLDMAN: We sent him a copy yesterday.
15 | THE COURT: All right.
16 | MR. CANNON: I did not receive a copy yesterday
17 | from --
18 | THE COURT: All right.
19 | MR. CANNON: -- their office.
20 | THE COURT: Well, you've got -- you'll receive it in
21 | the hallway. But take a look at it. And when Ms. Ismail gets
22 | here, get our attention; we'll recall the case.
23 | MR. GOLDMAN: Okay.
24 | THE COURT: Thank you.
25 | MR. GOLDMAN: Thank you.

| | |
|---|---|
| 1 | MR. CANNON: Thank you, your Honor. |
| 2 | (The Court attends to other matters; resumed at 9:31 a.m.) |
| 3 | THE CLERK: How about on Ismail? Still waiting? |
| 4 | MR. CANNON: We're still waiting. |
| 5 | (The Court attends to other matters; resumed at 9:36 a.m.) |
| 6 | THE CLERK: All right. Do we have everybody on |
| 7 | Ismail? We're still waiting? |
| 8 | MR. CANNON: We're still waiting. |
| 9 | (The Court attends to other matters; resumed at 9:45 a.m.) |
| 10 | THE CLERK: Okay. We're still waiting on Ismail. |
| 11 | Correct? All right. |
| 12 | (The Court attends to other matters; resumed at 9:48 a.m.) |
| 13 | (Ms. Patton Ismail enters the proceedings.) |
| 14 | THE COURT: All right. Are we ready to proceed? |
| 15 | MR. GOLDMAN: Yes. |
| 16 | THE COURT: All right. |
| 17 | THE CLERK: Okay. All right. |
| 18 | This is 15 C 399, Patton Ismail v. Triton College. |
| 19 | THE COURT: Good morning. |
| 20 | MR. CANNON: Good morning again. Dan Cannon for the |
| 21 | defendant, Triton College. |
| 22 | MR. GOLDMAN: Jonathan Goldman on behalf of Ms. Patton |
| 23 | Ismail. And this is Ms. Patton Ismail. |
| 24 | THE COURT: All right. Good morning. |
| 25 | MS. PATTON ISMAIL: Good morning. |

1  THE COURT: All right. This was a motion by
2  defendants to enforce the settlement agreement. They had
3  assumed, in light of the way the agreement was executed, that
4  the case was over.
5  And apparently, Ms. Ismail, you went to the Illinois
6  Department of Human Rights and refiled a complaint?
7  MS. PATTON ISMAIL: I went there to ask questions
8  because I had some concerns about the whole process. I said
9  when I initially went into this, "I didn't know that my job
10 could be in jeopardy." And I just had questions about the
11 whole process.
12 And then -- then during the course of it, they
13 basically took the charge. They took it as a charge. And then
14 when I called the counselor after the attorney called and said
15 that, you know, "You can't do this," I called the counselor and
16 spoke with the counselor there.
17 THE COURT: And before you go further, you don't have
18 to discuss conversation you had with your lawyer. If you want
19 to, you're free to.
20 MS. PATTON ISMAIL: No.
21 THE COURT: But you don't have to.
22 MS. PATTON ISMAIL: Well, no.
23 And so I was talking to the counselor down there, and
24 I said, you know, "I really don't understand why some of this
25 transpired, why they had the right, I guess, to ask me to leave

1  my employment."
2  THE COURT: And when you say talk to the counselor,
3  who are you talking about?
4  MS. PATTON ISMAIL: The Illinois Department of Human
5  Rights counselor.
6  THE COURT: Oh, not your attorney, the --
7  MS. PATTON ISMAIL: No.
8  THE COURT: Someone at --
9  MS. PATTON ISMAIL: Yeah.
10 THE COURT: -- Illinois Department of Human Rights.
11 Okay.
12 MS. PATTON ISMAIL: And once I -- during the course of
13 the conversation with this individual, they said basically when
14 I signed, I relinquished all rights for discrimination.
15 I said, "Okay. So, therefore, I don't get a" -- I
16 mean, I agreed -- in my point of view, I was agreeing to drop
17 all charges for that amount. Okay.
18 I didn't really feel that my employment should have
19 been in jeopardy based on what was told to me by the Illinois
20 Department of Human Rights.
21 THE COURT: Well, you signed the settlement agreement,
22 correct?
23 MS. PATTON ISMAIL: Yeah. I've never gone through
24 this process and hopefully never will have to go through it
25 again.

1           THE COURT:  Well, I don't blame you.  No one wants to
2    go through it.
3           But the -- I don't -- nor -- I don't interfere -- if
4    you've reached a settlement, the settlement is the deal.
5           MS. PATTON ISMAIL:  Mm-hmm.
6           THE COURT:  And if you signed it, that's the deal
7    that's enforced.
8           Was the job termination part of the settlement
9    agreement?
10          MS. PATTON ISMAIL:  Yes.  I had to agree to the terms.
11   And the terms that Triton put in place is that I had to resign.
12   And I was adamant, you know, of course, of not resigning but
13   being transferred to another area or whatever.  And so I didn't
14   get the settlement till after I left.
15          THE COURT:  Any comment by defense counsel?
16          MR. CANNON:  I --
17          THE COURT:  The deal is the deal.  If you signed it --
18   you're an intelligent person.  You work at the school.
19          MS. PATTON ISMAIL:  Mm-hmm.
20          THE COURT:  If you signed it and part of the
21   settlement agreement involved your no longer working there,
22   there's no do-overs; that's done.
23          And if you are questioning -- and was it your
24   questioning about that that caused you to go to the Illinois
25   Department of Human Rights?

9

1         MS. PATTON ISMAIL:  Yeah, I went there, yes.
2         And they said, "Well, is there a Title VII clause in
3  there?"
4         And I said, "Well, I'm not a hundred percent sure.
5  I'll go back and look."
6         THE COURT:  Sure.
7         MS. PATTON ISMAIL:  Okay?  But this was undoubtedly --
8  I did not understand.  I didn't get probably the best advice
9  when I went down there.  And I -- if I was not in my right, I
10 would not have done it.
11        THE COURT:  All right.
12        MR. CANNON:  Your Honor, may I just make a comment --
13        THE COURT:  Go ahead.
14        MR. CANNON:  -- too?
15        Well, Ms. Ismail persists in her contention, as you
16 can see in her charge, that she was constructively discharged
17 and forced to resign.
18        The negotiations were pretty straightforward.  There
19 was a demand.  The college ended up paying more than demand --
20 the demand in order to make it global, including a resignation
21 and dismissal of her other half dozen charges.
22        So Ms. Ismail in her current charge states that the
23 vice president of business of Triton College walked into her
24 office on April 15th, the day after she signed the settlement
25 agreement and her last day of physically being on the campus,

1 and forced her to sign a document.

2 Now, that by any account is just simply not true.

3 Ms. Ismail also has filed a claim for unemployment
4 compensation, which is in process, and she claims in there that
5 she was involuntarily discharged.

6 As you know, with unemployment, if you're fired, you
7 get benefits; if you resign, you don't. So she's made that
8 argument there. She's making it again in the Department of
9 Human Rights. She won't let this go.

10 And as her -- Mr. Goldman said when we were up here
11 before, she's upset about having to resign in exchange for a
12 very large sum of money. And I think she -- that she needs to
13 be sanctioned for that.

14 THE COURT: Has the money been paid?

15 MR. CANNON: Oh, long ago, in April.

16 THE COURT: Has it been spent?

17 MS. PATTON ISMAIL: Can I say something?

18 MR. CANNON: Well, it was cashed certainly.

19 THE COURT: All right.

20 MR. CANNON: It was payable to counsel's client trust
21 account.

22 THE COURT: And it was --

23 MR. CANNON: You know, typical.

24 THE COURT: And it was disbursed to your client?

25 MR. GOLDMAN: Yes.

| | |
|---|---|
| 1 | THE COURT: Okay. All right. |
| 2 | Well, anything you want to add, Ms. Ismail? |
| 3 | MS. PATTON ISMAIL: Yes. |
| 4 | THE COURT: Briefly. |
| 5 | MS. PATTON ISMAIL: Yes. I didn't state that with the |
| 6 | Illinois Department of Human Rights about Sean Sullivan coming |
| 7 | into my office and forcing me to do anything. That was |
| 8 | nothing -- that is not true. Okay? I just talked with the |
| 9 | Illinois Department of Human Rights. |
| 10 | They basically told me that they don't deny any |
| 11 | complaints or charges -- okay? -- that they will process stuff |
| 12 | through. And I said, "You shouldn't do that. If a person's |
| 13 | not in their right to file a charge based on" -- you know, I |
| 14 | didn't reveal any of the details of the contract, but I told |
| 15 | them that a contract agreement was agreed upon and signed. |
| 16 | Then, you know, that is not true because I didn't |
| 17 | discuss any details about what transpired per se the way |
| 18 | Mr. Cannon is stating. |
| 19 | And -- let me finish, please -- and when I went to |
| 20 | file for unemployment, I filed -- if you looked at the |
| 21 | paperwork -- that I put down that I had -- I felt I had no |
| 22 | choice but to resign. My health was deteriorating. And I |
| 23 | filed voluntary leave. I did not lie. Okay? |
| 24 | I'm relying on these agencies to tell me you are in |
| 25 | your right; are you not in your right. Okay? So I did not |

1  lie -- okay? -- when I went to the unemployment office.  I
2  tried to exercise a right that I thought I had.  Okay?
3           So what he's saying is not correct.
4           THE COURT:  All right.  Well, and I don't need to --
5           MS. PATTON ISMAIL:  Mm-hmm.
6           THE COURT:  -- referee and make -- if I wanted a
7  hearing, I'd call everybody as a witness.  I'd swear you in;
8  I'd put you on the witness stand.
9           This case, as far as I was concerned, has settled.
10          MS. PATTON ISMAIL:  Okay.
11          THE COURT:  Ms. Patton Ismail, you cannot take steps
12 to do do-overs on this.
13          MS. PATTON ISMAIL:  Okay.
14          THE COURT:  You can't refile charges.  And I know, as
15 I understand it, that was not your intent.
16          MS. PATTON ISMAIL:  No, it wasn't.
17          THE COURT:  And have you withdrawn that?
18          MS. PATTON ISMAIL:  Yes.  I did it -- they didn't even
19 give me 24 hours to withdraw it.  My attorney had contacted me,
20 I guess sent an e-mail to me.  They didn't contact me.  My
21 attorney did at like -- on Friday, but I didn't read it until
22 Monday morning.  So I didn't look at my e-mails.
23          As soon as I received that e-mail, I responded to it.
24 And I also called the Illinois Department of Human Rights to
25 request -- and I have an e-mail stating to that request -- the

```
 1  form to withdraw.
 2          THE COURT:  All right.  Has that form been filed?
 3          MS. PATTON ISMAIL:  Yes.
 4          THE COURT:  All right.  And when was it filed?
 5          MR. GOLDSMITH:  It was --
 6          MS. PATTON ISMAIL:  On the 12th.
 7          MR. GOLDMAN:  It was -- it's received-stamped on the
 8  14th, but I understand it was filed on the 12th.
 9          MS. PATTON ISMAIL:  The person that processes the
10  paperwork was not in on the 13th.
11          THE COURT:  All right.
12          All right.  Mr. Cannon, are you satisfied that this is
13  over with before the Illinois Department of Human Rights?
14          MR. CANNON:  Yeah.  Procedurally, there's just a
15  couple practical glitches, your Honor.  One is that the
16  Department of Human Rights has not issued an order of closure.
17  There's a parallel filing with the EEOC.
18          The EEOC in one of the cases underlying this that she
19  agreed to dismiss that was covered in the settlement agreement
20  just kind of two years after the case was done at the IDHR
21  entered a right-to-sue -- issued a right-to-sue letter on
22  May 19th.  So these things happen.
23          What's going to happen here is very likely that will
24  happen unless this Court enters an order very specifically with
25  the department case number, the EEOC case number, and hopefully
```

1  even the unemployment compensation claim number indicating that
2  she's barred from proceeding on these matters or something like
3  that.
4     THE COURT: I'm not going to do that.
5     Here's what I'm going to do. Ms. Ismail, I was close
6  to awarding costs for having him come down to court to
7  answer -- to file this motion, but it's probably -- and I would
8  have awarded those costs and required you to pay it personally.
9     MS. PATTON ISMAIL: Mm-hmm.
10    THE COURT: I'm not going to do that.
11    Triton, though, doesn't need to be paying him
12 attorney's fees to keep coming down here on a case they
13 settled.
14    MS. PATTON ISMAIL: Okay.
15    THE COURT: Triton is entitled to peace on this case
16 because they paid you money --
17    MS. PATTON ISMAIL: Mm-hmm.
18    THE COURT: -- for you to drop the case.
19    MS. PATTON ISMAIL: Mm-hmm.
20    THE COURT: If you have -- are going to take steps
21 involving the ID -- the SEC, the Illinois Department of Human
22 Rights, or unemployment, you need to talk to Mr. Goldman before
23 you do it and make sure what you're doing is not in violation
24 of the settlement agreement.
25    MS. PATTON ISMAIL: Okay.

1  THE COURT: If you have to come down here again, I
2  will award their costs, and you're going to have to pay his
3  attorney's fees. And I don't want to do that to you.
4  MS. PATTON ISMAIL: Okay.
5  THE COURT: Your -- the -- you -- this case is over
6  for you. Whether you have buyer's remorse over the settlement
7  or not, that's -- that's too late.
8  MS. PATTON ISMAIL: Okay.
9  THE COURT: Decided. You're -- you're an intelligent
10 person. You signed it with knowledge of what the ramifications
11 of it were.
12 But if you take other actions that you're going to do,
13 whether it's being unemployment or any other actions that could
14 implicate Triton --
15 MS. PATTON ISMAIL: Mm-hmm.
16 THE COURT: -- you need to talk to your counsel and
17 make sure what you're doing is not in violation of the
18 settlement agreement. Okay?
19 MS. PATTON ISMAIL: Okay.
20 THE COURT: And, Mr. Goldman, you're -- although
21 you're -- I'm not sure Ms. Patton Ismail is still your client,
22 I think for continuing purposes, you need to at least give her
23 advice about the settlement agreement you were involved in
24 executing.
25 MR. GOLDMAN: Sure.

1     THE COURT: And if -- so call Mr. Goldman or
2  Mr. Ehrlich if you -- on any of these issues. But if you take
3  any affirmative steps in the future that implicate in any way
4  Triton --
5     MS. PATTON ISMAIL: Mm-hmm.
6     THE COURT: -- you better check with them first
7  because if it's in violation of the settlement agreement, we're
8  going to have another hearing like this. And if Mr. Cannon has
9  to come down here again, his fees aren't going to be charged to
10 Triton; they're going to be charged to you.
11    MS. PATTON ISMAIL: Okay. I understand.
12    THE COURT: Am I clear?
13    Does anyone have any questions?
14    MR. GOLDMAN: No.
15    MR. CANNON: Only -- I'm -- what would be the order
16 that's issued today, your Honor?
17    THE COURT: Well, your motion is titled a Motion to
18 Compel Enforcement of the Settlement Agreement. That's going
19 to be denied without prejudice because it has been represented
20 she has withdrawn her charge from the Illinois Department of
21 Human Rights. I'm not going to order them to follow their own
22 rules, which will be to dismiss the case that's been withdrawn
23 by the plaintiff.
24    And as far as the unemployment situation, if -- you
25 just better be accurate in what you represent to them. And if

1     you have doubts --

2              MS. PATTON ISMAIL:  Well, I was -- I was forthcoming.
3     Excuse me.  I was forthcoming on how I felt.  And I wasn't
4     trying to disclose -- or how you say -- hide anything.  I
5     disclosed everything.  But I rely on -- and, actually, they
6     gave me the option to -- within 35 days to appeal with -- in
7     front of the circuit court.

8              THE COURT:  Well, if Triton gets involved in this
9     again because you're doing something in violation of the
10    settlement agreement --

11             MS. PATTON ISMAIL:  Uh-huh.

12             THE COURT:  -- you're going to pay their fees.  It's
13    that simple.

14             MS. PATTON ISMAIL:  Okay.

15             THE COURT:  If you have -- and I'm not going to get
16    involved in this right now.  If you have any doubts about
17    whether what you're about to do is going to land you back in
18    court here --

19             MS. PATTON ISMAIL:  Uh-huh.

20             THE COURT:  -- you need to talk to your counsel.

21             MS. PATTON ISMAIL:  Okay.  I will.

22             THE COURT:  And then your counsel will talk to
23    Mr. Cannon.

24             MS. PATTON ISMAIL:  Okay.

25             THE COURT:  I don't expect to see you back here in

1  court.

2  MS. PATTON ISMAIL: Okay.

3  THE COURT: And so don't put yourself in that
4  position.

5  MS. PATTON ISMAIL: I won't.

6  THE COURT: All right. So your motion is denied. I'm
7  not going to award fees on this motion because of the swift
8  withdrawal of the complaint by Ms. Ismail once she learned that
9  she shouldn't have filed it.

10 MR. CANNON: All right. Denied without prejudice?

11 THE COURT: Without prejudice.

12 MR. CANNON: I don't want to come back again either,
13 but --

14 THE COURT: All right. It's denied without prejudice,
15 but I think I'm pretty clear about what would happen if you
16 came back. So thank you all.

17 MR. CANNON: Thank you, your Honor.

18 MS. PATTON ISMAIL: Thank you.

19 MR. GOLDMAN: Thank you.

20 (Concluded at 10:02 a.m.)

21                    C E R T I F I C A T E

22 I certify that the foregoing is a correct transcript of the
23 record of proceedings in the above-entitled matter.

24
   */s/ LAURA R. RENKE*                              *October 19, 2016*
25 LAURA R. RENKE, CSR, RDR, CRR
   Official Court Reporter